## J. H. PEREGOY AND WIFE v. ISADORE KOTTWITZ.

(Case No. 1203.)

1. HOMESTEAD.— Two adjoining parcels of land separated by a partition fence belonged to a man and his wife, who occupied as their home a residence on one of them; each parcel was improved, having on it a dwelling house, with outhouses. The husband executed in February, 1876, a deed of trust to secure a loan on the parcel of land, the houses on which were not then actually occupied by him. The wife did not join in the deed. In a suit between the wife, asserting homestead rights, and the purchaser at sheriff's sale, after foreclosure of the lien, *held* —

　　1. If the money was loaned and the deed of trust executed before the husband and wife asserted a homestead claim to, and used the place for, homestead purposes, the homestead right could not attach so as to defeat the trust deed.

　　2. In the absence of such assertion of homestead claim and exercise of homestead use, the husband could execute a valid trust deed on the property to secure a loan.

2. CHARGE OF COURT — FACT CASE.— See statement of case for a charge of the court in regard to a claim of homestead rights, which was sustained.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Isadore Kottwitz, as guardian of the Coleman minors, brought trespass to try title against J. H. Peregoy and W. O. Waters, the tenant of Peregoy, in possession of

the premises sued for.    J. H. Peregoy pleaded a general denial.

Jane Peregoy, the wife of J. H. Peregoy, intervened in the case, and claimed the premises sued for as a part of the homestead of herself and J. H. Peregoy.

The plaintiff filed a replication to intervenors' claim of homestead rights, and set up that in February, 1876, J. H. Peregoy borrowed about $3,000 of plaintiff, and gave a deed of trust on the property in controversy to secure the debt; that subsequent to giving the deed of trust, J. H. Peregoy conveyed the premises to his son, W. H. Peregoy, and W. H. Peregoy executed his notes to J. H. Peregoy for five thousand dollars for the property; that plaintiff subsequently became the owner of the notes executed by W. H. to J. H. Peregoy, sued on them, recovered judgment against J. H. and W. H. Peregoy, subjecting the property to the lien of the notes, and purchased the property at sale under that judgment.

There was a verdict and judgment in favor of plaintiff for the land against all the defendants.    The intervenor, Jane Peregoy, and her husband, filed a motion for a new trial, which having been overruled, they gave notice of appeal, and assign as error the charge of the court.  There were no exceptions taken or special charges asked.

The charge of the court was as follows: "Find for plaintiff, unless the proof shows that prior to the date of the notes upon which the judgment of Kottwitz v. J. H. Peregoy was rendered, the land in controversy was in fact a part and parcel of the home place of J. H. Peregoy and his wife, and as such used by him prior to the date of the loan of money from Sterne, guardian, if the proof shows such loan of money.   If the proof shows that prior to the using and claiming the piece of land in controversy, J. H. Peregoy had given notes to the Coleman minors and Samuel Sterne, their guardian, secured by a trust deed, and that after the sale from the father to the son,

the father turned over the son's note to the guardian, then the homestead rights, if any, are subordinate to the debt to said minors so secured.

"Or if the proof shows that, at the time of borrowing of the minors by J. H. Peregoy, the place in controversy was not in use as a part of the homestead, but was a piece of land acquired after the original homestead of Peregoy, acquired from Hennessy, then find for plaintiff. The homestead protected by the law is the place of residence, not merely a convenient piece of adjoining land acquired at a different time. Whether or not the McGowan piece of land now in controversy was ever, in fact, a part and parcel of Peregoy's homestead, is for you to determine from a fair consideration of all the facts. If the proof shows that the said piece of land in controversy was separated by a fence, and was rented out, and never actually used prior to the loan of the minors' money as and for homestead purposes, then find against homestead. On the other hand, if the proof shows that prior to, and at the same time of, the loan from the Coleman minors, that in truth and in fact, said piece of land was actually used as a part and parcel of the home place of Peregoy and wife, then notwithstanding Peregoy sold it, find for defendants, that it is a part and parcel of the homestead of defendants."

There was no pretense that the two improved parcels of ground were in quantity or value in excess of the amount which could be protected as a homestead.

[No briefs on file for either party.]

WATTS, COMMISSIONER.— The case before us is one of not unfrequent occurrence in this state, where money has been secured as a loan, upon the faith of a lien as security upon a lot or lots of land, and in which the homestead indications are attempted to be made to appear

much stronger upon the trial than they did actually appear at the time the loan was secured.

Here, Peregoy was occupying a lot, upon which was situated a dwelling, outhouses and other appliances necessary to constitute a home. Adjoining this he had purchased another lot, upon which was also situated a dwelling, outhouses, etc., necessary to make it a home. To all appearances he owned two places; occupying the one and renting the other. Under this condition of affairs he applied to Sam Sterne, who, as guardian of the minors, had money to loan, and succeeded in obtaining a loan, upon the faith of a deed of trust upon the place not occupied by him, as security therefor. Subsequently he conveyed the place to his son, taking his notes for the purchase money thereof; he delivered the son's notes to the appellee, Kottwitz, who had then become the guardian of the minors.

Mrs. Peregoy did not sign and acknowledge either the trust deed or conveyance to the son. Kottwitz sued on the notes, secured the foreclosure of the lien, and purchased the property. He then sued Peregoy and Waters for the place. Mrs. Peregoy intervened and asserted the homestead claim, averring that they had used and claimed the same as part of their homestead; that the use consisted in planting and cultivating a garden thereon, getting water out of the cistern, etc. This was denied by the plaintiffs. The issue of fact thus made was submitted to the jury for their determination, and the finding thereon was against the appellants.

It is urged by appellants that the court erred in its charge to the jury; that an erroneous statement of the law applicable to the case was therein given; that the jury was misled by the same; and that it was a charge upon the weight of evidence.

The charge must be taken and considered as a whole. And after carefully considering the same in this way, we

have been unable to find any such error in the charge as would warrant a reversal of the judgment.

If the money was loaned, and the deed of trust executed, before appellants asserted a homestead claim to, and used the place as a homestead, then the homestead right could not thereafter attach to the same so as to defeat the trust deed. And in such case the husband, independent of the wife, could make any disposition of the property that he saw proper, to discharge the lien.

The charge of the court was in accord with this view of the law, and was a correct exposition of the same. Nor do we think that the charge is subject to the other objections taken thereto.

No exceptions were taken, and no special charge asked upon the trial. This being the fact, it is not every error in the charge that will be ground for reversal. We think the verdict of the jury is amply sustained by the evidence.

The constitution protects from forced sale the homestead of a family in a city, town or village, consisting of a lot or lots, not to exceed in value five thousand dollars at the time of their destination as such, without reference to the value of any improvements thereon. It may be assumed that the real and important object and purpose of the provision was to protect our women and children in a home against the rapacity of the eager creditor, and the improvident husband or father. It is the home, whether it consists of a lot or lots, that is thus protected by an unyielding and inflexible constitutional provision. And it is the home, *only*, around which this protecting shield is thrown, by the law of the land. Our state stands pre-eminent in this respect; and that eminence is due to the wisdom and statesmanship of such of the fathers of our jurisprudence as the lamented Hemphill, Lipscomb and Wheeler, whose names are hallowed with the most cherished memories of the young republic and the infant state.

No more sacred duty can be imposed upon the courts of justice than to preserve and vigorously enforce this provision in its true spirit and intent, to carry out its prime object and purpose, and thus not only to attain that object, but also that there might eventuate therefrom all the cumulative and incidental benefits that were discovered and appreciated by those jurists who originated the idea and formulated it into a constitutional provision. Its enforcement is the bulwark that protects the babe and the mother, the orphan and the widow, from penury, destitution and want. Its enforcement concentrates our affections upon the home and the soil upon which we live, and in a manner makes us fixtures and permanent citizens.

But while the courts should be urged by such considerations to promptly extend the arm of justice in protecting these rights, there is a corresponding duty to prevent the right from being converted into a cover for covin and fraud.

Evil attends the greatest good. So, as a rule, the greater the benefit conferred by law, the more insidious and active the fraud in attempting to pervert it. There will ever be two sides to the question; and should the courts devote entire attention to the one, corruption and fraud will steal in upon the other, and convert the right into the wrong and benefits into curses.

The constitution protects *the home*, but will never tolerate a fraud.

We are of the opinion that there is no error in the judgment, and that it ought to be affirmed.

AFFIRMED.

[Opinion delivered March 22, 1881.]